IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| THE WEITZ COMPANY, L.L.C., | ) |
| | ) |
|     Plaintiff/Third-Party Plaintiff | ) |
| | ) |
| vs. | )   Case No. 07-0103-CV-W-ODS |
| | ) |
| MacKENZIE HOUSE, L.L.C. and | ) |
| MH METROPOLITAN, L.L.C., | ) |
| | ) |
|     Defendants/Counterclaimants, | ) |
| | ) |
| ARROWHEAD CONTRACTING, INC., | ) |
| CONCORDE CONSTRUCTION | ) |
| COMPANY, INC., POLAR AIRE | ) |
| HEATING AND COOLING SERVICE, | ) |
| INC., CONSTRUCTION BUILDING | ) |
| SPECIALTIES, INC. and FIDELITY | ) |
| DEPOSIT COMPANY OF MARYLAND, | ) |
| | ) |
|     Third-Party Defendants. | ) |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending is Plaintiff's Motion for Partial Summary Judgment. For the following reasons, the motion (Doc. # 121) is granted in part and denied in part.

## I. BACKGROUND

Defendant MH Metropolitan, LLC, owns a project to build an apartment complex at 45th and Madison in Kansas City, Missouri. Defendant MacKenzie House, LLC, is MH Metropolitan's managing member. Plaintiff was the general contractor originally retained to construct the apartments and other buildings/amenities for the complex. The contract was terminated on January 18, 2007, allegedly because Plaintiff failed to meet certain deadlines. The propriety of the termination, which is in dispute, is not relevant to the issues raised in this motion. Plaintiff initiated this lawsuit, contending it was due

money under the contract. Defendants[1] counterclaimed, alleging Plaintiff owes money pursuant to a liquidated damages clause contained in the contract. The issue of whether the clause was triggered is also beyond the scope of the motion; instead, Plaintiff's motion attacks the provision's enforceability and certain issues related to its application that do not depend on disputed facts about the construction's progress.

On July 9, 2008, the Court directed the parties to supplement the record by delivering "a single, complete set of the documents they agree combine to constitute their agreement." The parties have complied, agreeing on all points except with respect to one document; however, they agree the one document is not relevant to the issues raised in Plaintiff's motion. The parties' have submitted (1) an AIA Document A111, (2) an AIA Document A201, and (3) a series of addendums, memos, and other documents. While the bulk of the agreement consists of AIA form contracts, virtually every section has been modified in some way.

The liquidated damage provision appears in section 4.7 of Document A111 and reads as follows:

> Liquidated Damages. The Contractor agrees that the Contractor shall pay to the Owner liquidated damages in accordance with the following schedule for each calendar day that Completion of a Building is delayed beyond the Scheduled Completion Date for such Building. The following liquidated damages amounts shall accrue separately, on a building-by-building basis:
>
> $760.00 for each calendar day that Completion of each Building of the Project is delayed more than 21 days after Scheduled Completion Date for such Building.
> $2,280.00 for each calendar day that Completion of each Building of the Project is delayed more than 45 days after Scheduled Completion Date for such Building.
> $3,040.00 for each calendar day that Completion of each Building of the Project is delayed more than 75 days after Scheduled Completion Date for such Building.

---

[1] There may be some dispute as to whether one, the other, or both Defendants have asserted the counterclaim. The issue is not important to the present motion, and for the sake of convenience the Court will continue to refer to the Defendants collectively.

2

> $3,800.00 for each calendar day that Completion of each Building of the
> Project is delayed more than 105 days after Scheduled Completion Date
> for such Building.

Defendants contend the liquidated damage applies to four "Buildings" that were not completed on time: the "North Building," the "Center Building," the "South Building," and the "Garage." They have also calculated the schedule cumulatively; for instance, for a delay in completion between seventy-six and 105 days, Defendants do not simply claim $2,280 per day for that time period. Instead, they claim the $2,280/day provision is *added to* the $760/day provision, resulting in liquidated damages $3,040 per day for the 76th through 105th days. Defendants have also calculated the liquidated damages through the Buildings' date of completion[2] and not the date the contract with Plaintiff was terminated.

Plaintiff's motion contends the liquidated damages provision is unenforceable because it is a penalty. Alternatively, Plaintiff challenges various aspects of Defendants' calculation; specifically (1) the number of "Buildings" involved, (2) the cumulative application of the monetary provisions, and (3) use of the actual completion date as the terminating point instead of the date the contract with Plaintiff was terminated.

## II.  DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In

---

[2]The buildings for which Defendants seek liquidated damages were completed by November 16, 2007.

applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### A. Enforceabilty of the Liquidated Damages Provision

Plaintiff contends the liquidated damages provision is unenforceable because it constitutes a penalty. "'The general rule is liquidated damages clauses are valid and enforceable, while penalty clauses are invalid. Liquidated damages are a measure of compensation which, at the time of contracting, the parties agree shall represent damages in case of breach. Penalty clauses, on the other hand, are a punishment for breach.'" Valentine's, Inc. v. Ngo, 251 S.W.3d 352, 355 (Mo. Ct. App. 2008) (quoting Paragon Group, Inc. v. Ampleman, 878 S.W.2d 878, 880-81 (Mo. Ct. App. 1994)). "For a damage clause to be valid as fixing liquidated damages: (1) the amount fixed as damages must be a reasonable forecast for the harm caused by the breach; and (2) the harm must be of a kind difficult to accurately estimate." Diffley v. Royal Papers, Inc., 948 S.W.2d 244, 246 (Mo. Ct. App. 1997); see also Information Systems & Networks Corp. v. City of Kansas City, 147 F.3d 711, 714 (8th Cir. 1998).

Here, the parties agreed the liquidated damage provision "represents a good faith estimate on the part of the Contractor and the Owner as to the actual potential damages that the Owner will incur as a result of late Completion of any such specified Building." A111 Contract, § 4.7.1. While not determinative, this declaration should be considered in determining whether the provision is a valid estimation or an invalid penalty. E.g., Diffley, 948 S.W.2d at 247. In addition, the clause applies only if the construction project is not completed on time. This circumstance is important because

4

Missouri courts recognize that "[t]ypically, liquidated damages appear in construction contracts and real estate sales where the damages incurred because . . . a building's completion is delayed or because real estate is not on the market are virtually impossible to calculate." AAA Uniform & Linen Supply, Inc. v. Barefoot, Inc., 81 S.W.3d 133, 138 (Mo. Ct. App. 2002); see also Sides Construction Co. v. City of Scott City, 581 S.W.2d 443, 446-47 (Mo. Ct. App. 1979).

The harm to the complex's owner – the lost revenue stream from renting the units – is difficult to predict and calculate, so it is the type of harm that is amenable to liquidated damages. As for the reasonableness of the forecast, Plaintiff has not suggested a comparison to the lost rental value of the property. Plaintiff argues the various increases to the daily rate demonstrate the provision is a penalty for nonperformance, but this is not accurate. The (lost) revenue stream becomes more valuable with the passage of time because an apartment building's occupancy starts low and builds over time, and increasing the daily rate of damage is a valid means of approximating that hard-to-calculate value.

Plaintiff's primary argument can be summarized thusly: the amount of liquidated damages sought is so large that it can only be characterized as a penalty. Plaintiff compares the amount of liquidated damages sought to the total price contemplated in the contract and asks the Court to conclude the liquidated damages are so high they must be a penalty. This comparison is not viable because the liquidated damages are intended to be an approximation of the harm suffered, not the cost of the building. Cf. Taos Construction Co. v. Penzel Construction Co., 750 S.W.2d 522, 526 (Mo. Ct. App. 1988) ("Taos cites no authority for the proposition that, because the liquidated damages assessed to it constitute almost 66 percent of the amount of the subcontract, the clause is actually a penalty clause. Taos looks to the wrong benchmark; any 'disproportion' must be measured against the amount of harm, not the dollar amount of the subcontract.").

All that was required at the time of contracting was for the liquidated damages to be a reasonable forecast of damages. E.g., Paragon Group, 878 S.W.2d at 881; Gaines v. Jones, 486 F.2d 39, 46 (8th Cir. 1973). The parties agreed, and the clause

5

appears to be, a reasonable forecast of the anticipated lost revenue from delayed completion. Plaintiff has not suggested to the contrary, so the Court concludes the liquidated damages clause is enforceable.

## B. The Number of Buildings

Plaintiff contends Defendants have misconstrued the contract by claiming liquidated damages for four Buildings, while Defendants argue the contract contemplates the four Buildings discussed earlier (North, South, Center, and Garage). The Court concludes the parties' agreement is unclear on this point and the matter will have to be decided by a jury.

The complex consists of two residential structures. Between those structures is another structure that serves as a combination clubhouse and leasing office. The garage is under all three buildings. The issue is: how many of these structures constitute a "Building" within the meaning of section 4.7? The parties capitalized the terms, indicating it is a term of special meaning in the contract – but the term is not explicitly defined. The closest attempt to define the term appears in section 4.4, where the parties agreed

> Completion ("Completion") of a building (the term building to include residential buildings, the leasing office, clubhouse, parking garage, swimming pool, collectively referred to herein as "Building") shall be deemed to have been achieved on the later to occur of . . . .

This provision is unclear. If all the individually listed items are *collectively* referred to as "Building," does this mean there is only one Building? Does the parenthetical indicating "the term building . . . include[s]" various specified structures mean each structure is a separate Building? If this were the case, one would expect the parenthetical to say each of the items is individually referred to as a Building, not that the collection of items will be so referenced. Moreover, what significance should be attached to the fact the parenthetical does not capitalize "building," as would be expected when referring to a defined term? Finally, countering the intimation from section 4.4 that there is only one

6

"Building" is the fact that section 4.7 seems to contemplate more than one Building – but section 4.4 does not clearly suggest how many "Buildings" there are.

Section 4.3 also addresses the term "Building" by providing "[t]he Contractor shall achieve Substantial Completion of the first Building not later than 406 days from the date of commencement, subject to adjustments of this Contract Time as provided in the Contract Documents." This suggests there is more than one Building, but does not indicate how many or what they are. This section also declares Plaintiff "shall achieve Substantial Completion of the entire Work not later than 458 days from the date of commencement," but does not indicate what, in addition to the first Building, constitutes the "entire Work:" is it one more Building, several Buildings, or a combination of Buildings and non-Buildings?

Defendant invites the Court to consider a schedule that is an agreed part of the contract as indicating what the "Buildings" are. This schedule, appearing as page number TWCe000209, lists five buildings or structures and for each lists a duration for construction, an early start date, and an early finish date. This may show what the parties intended to be constructed as part of the project, but it does not necessarily demonstrate what they meant when the utilized the term "Building." Section 4.2.1 provides that the Project Schedule will show, among other things, "commencement and completion dates for each building, structure and amenity." Assuming the aforementioned schedule is the Project Schedule, section 4.2.1 does not state the Project Schedule identifies "Buildings:" it says the Project Schedule identifies buildings, structures and amenities. Even if "Buildings" and "buildings" are the same, the Project Schedule's inclusion of "structures" and "amenities" means some of the items listed are not Buildings (or buildings), but nothing indicates the difference.

Section 4.8 establishes incentive fees if "the first residential Building" is completed by a particular deadline, but declares an "incentive fee shall not apply to the second residential Building." This could be interpreted as meaning there are some "non-residential Buildings" that nonetheless constitute "Buildings" for purposes of the liquidated damages clause. On the other hand, Section 4.7.1 addresses the harm to Defendants if "Completion of a Building or other improvement" is not accomplished by

7

the scheduled date – but only provides liquidated damages in the event a Building is not completed on time. This suggests there are some things being constructed that are not Buildings.

The parties also make various arguments based on the dictionary definitions of various words and the realities of what was being constructed. These arguments do not clearly augur in favor of one part or the other, and all of them ignore the parties' intent to adopt a particularized, non-ordinary definition of the term. Unfortunately, they have not clearly indicated the meaning to be employed, and summary judgment cannot be granted on this issue.

## C. The Method of Addition

Plaintiff challenges Defendants' cumulative method of calculating the liquidated damages. On this point, the Court agrees with Plaintiff. To restate the issue: the contract provides in pertinent part that

> The following liquidated damages amounts shall accrue separately, on a building-by-building basis:
>
> > $760.00 for each calendar day that Completion of each Building of the Project is delayed more than 21 days after Scheduled Completion Date for such Building.
> > $2,280.00 for each calendar day that Completion of each Building of the Project is delayed more than 45 days after Scheduled Completion Date for such Building.
> > $3,040.00 for each calendar day that Completion of each Building of the Project is delayed more than 75 days after Scheduled Completion Date for such Building.
> > $3,800.00 for each calendar day that Completion of each Building of the Project is delayed more than 105 days after Scheduled Completion Date for such Building.

This natural and logical interpretation suggests that (1) for days twenty-two through forty-five the liquidated damages are $760 per day, per Building, (2) for days forty-six through seventy-five the damages are $2,280 per day, per Building, (3) for days seventy-six through 105 the damages are $3,040 per day, per Building, and (4) for days

8

beyond 105, the damages are $3,800 per day, per Building. Defendants disagree, contending that the fact that the "amounts shall accrue separately" means each clause applies in a cumulative fashion. This interpretation ignores the more obvious contextual meaning; namely, that the damages are calculated "separately, on a building-by-building basis." Thus, completion of one Building will terminate the accrual of liquidated damages, but only with respect to that Building.

### D. Effect of Termination of the Contract

Plaintiff contends Missouri law dictates that the liquidated damages ceased to accrue when it was terminated in January 2007, and offers the Missouri Court of Appeals' decision in *Twin River Construction Co. v. Public Water Dist. No. 6* as "binding" support for the proposition. In *Twin River*, the Missouri Court of Appeals relied on a 1908 decision from the Missouri Supreme Court to reject a claim for "liquidated damages for a 'reasonable' time after abandonment by the contractor or termination by the owner" because "liquidated damages are no longer available" after the contract ends because "the contractor should not be responsible once he loses his ability to control the date of completion." 653 S.W.2d 682, 694 (Mo. Ct. App. 1983) (citing Moore v. Board of Regents, 115 S.W. 6 (Mo. 1908)). Plaintiff misstates this Court's obligations when applying state law, and the Court reaches a different conclusion on the matter.

When there is no statute on point and a state's highest court has not clearly opined on the matter, a federal court is obligated to predict how the state's highest court would resolve the matter. E.g., Pennsylvania Nat'l Mutual Casualty Ins. Co. v. City of Pine Bluff, 354 F.3d 945, 952 (8th Cir. 2004); Maschka v. Genuine Parts Co., 122 F.3d 566, 573 (8th Cir. 1997). Decisions of the intermediate and lower courts are an indication of how the state's highest court might rule, but they are not dispositive and, hence, not binding. "Our task . . . is to predict how the Missouri Supreme Court would resolve this issue, not how the intermediate state courts have resolved it." Bogan v. General Motors Corp., 500 F.3d 828, 831 (8th Cir. 2007); see also Minnesota Supply Co.

9

v. Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006); Continental Casualty Co. v. Advance Terrazzo & Tile Co., 462 F.3d 1002, 1007 (8th Cir. 2006).

The *Twin River* court acknowledged other jurisdictions have reached an opposite conclusion, but felt constrained to follow *Moore*. Closer examination of *Moore* reveals the Missouri Supreme Court did not purport to establish a broad principle of law, but rather was considering only the terms of the contract in the case before it. The case involves facts eerily similar to those in the case at bar. The litigants were parties to a contract that called for the plaintiff to construct a gymnasium for the defendant. The defendant terminated the contract before the building was completed; the plaintiff alleged the termination was wrongful and sought compensation for the labor and materials expended prior to the termination. The defendant alleged termination was proper because the plaintiff failed to meet certain deadlines established in the contract. The defendant further sought liquidated damages pursuant to a contract provision "providing that in case of the failure of the plaintiffs to complete the building within the time limited in the contract that they should pay the defendants $20 a day for each week day intervening after the completion of the work . . . ." The plaintiff contended the delays were the fault of the defendant and events that were excluded under the contract. Moore, 115 S.W. at 6-7. In affirming the trial court's refusal to submit the issue of liquidated damages to the jury, the Missouri Supreme Court analyzed the contract's language and concluded "[t]his penalty of $20 a day was allowed defendants only on condition that plaintiffs completed the contract but failed to finish it in the time specified." Id. at 13. Perhaps the then-existent hostility to liquidated damages affected the interpretation, but the fact remains that the issue decided was the meaning of that particular contract and not a broad principle of law.

Having determined the Missouri Supreme Court has not ever (much less recently) addressed the issue, this Court is obligated to divine how it would resolve the issue if presented with the issue today. *Twin River* does not aid this effort because it rests upon an interpretation of *Moore* that the undersigned finds wanting. The best course is to consider general contract principles. In that regard, the Court observes that prevailing views on the matter have changed over time. Originally, liquidated damages

10

for delayed completion were not permitted if the contractor did not complete the project, but "by the 1940's the trend was to the contrary. This shift in perspective is also apparent when one compares Williston's 1920 edition of *Contracts* with the current, 1961 edition: The early edition flatly stated that liquidated damages could not be recovered if the contract was totally abandoned, while the current edition concludes that the courts are far from uniform on this issue." Construction Contracting & Management Inc. v. McConnell, 815 P.2d 1161, 1167 (N.M. 1991). Indeed, *Twin River* acknowledged the different views of other jurisdictions. 653 S.W.2d at 694. As suggested by the New Mexico Supreme Court in *McConnell*, many jurisdictions changed their views in or after the 1950s and now allow liquidated damages even if the contractor does not complete the project. E.g., Austin Griffith v. Goldberg, 79 S.E.2d 447, 455 (S.C. 1953) ("[W]e hold that where a the contractor abandons the work after the time fixed for completion, the clause providing for liquidating damages applies from the time fixed for completion until the work is abandoned, and for a further period of time reasonably necessary to complete the job. Of course, the owner may not increase his recovery either by unreasonable delay in taking over the job, or by failing to complete it with diligence and dispatch."); see also City of Boston v. New England Sales & Mfg. Corp., 438 N.E.2d 68, 69-70 (Mass. 1982).[3]

"There was a time when the courts were quite strong in their view that almost every contract clause containing a liquidated damage provision was, in fact, a forfeiture provision which equity abhorred, and therefore, nothing but actual damages sustained by the aggrieved party could be recovered in case of contract breach caused by delay past the proposed completion date." Sides Construction Co., 581 S.W.2d at 446-47. In "modern times," this hostility has relaxed and, as it has, so too has the view that

---

[3]In some of these cases, the "abandonment" refers to the contractor's unilateral and voluntary abandonment of the project. The Court sees no difference between (1) a contractor who abandons a contract before it is completed and (2) a contractor who is properly discharged by the owner before it is completed – provided, of course, that the project is eventually completed. If the owner abandons the project, liquidated damages cannot be allowed to accumulate in perpetuity, and so are probably not allowed at all. Cf. Oregon State Highway Comm'n v. DeLong Corp., 495 P.2d 1215, 1229-30 (Or. Ct. App. 1972).

11

terminating the contract terminates the damage caused by the contractor's delay. Damages from the delay do not end simply because the contractor is no longer working on the project, and if one accepts (as the Court has here) that the liquidated damages provision is intended to compensate the owner for that delay, there is no principled reason for terminating that recovery. A contrary holding presents the owner a Hobson's choice between (1) terminating the breaching contractor so the project can be finished, but foregoing full recovery for the delay, and (2) waiting until the contractor eventually finishes to preserve recovery of damages. Allowing liquidated damages beyond the termination date presents concerns for the contractor, but those concerns are adequately addressed by requiring the owner to establish that the contractor was properly terminated and by allowing the contractor to argue and prove that the owner was not diligent in completing the project.[4] For these reasons, the Court concludes that if the Missouri Supreme Court were to address the issue today, it would opt in favor of the now-prevailing view.

### III. CONCLUSION

Plaintiff's Motion for Summary Judgment is granted in part and denied in part. The Court concludes the liquidated damage provision is not a penalty and is valid and enforceable, and that Defendants may be entitled to liquidated damages from the time completion was due until completion actually occurred, regardless of the fact that Plaintiff was terminated before the project was completed. The Court also concludes Defendants' "cumulative method" of calculating the amounts due is not permitted under the contract. Finally, the Court concludes the contract is ambiguous as to the number of

---

[4]Nothing herein is intended to suggest Defendants properly terminated Plaintiff or that they diligently completed the project after Plaintiff's termination.

12

"Buildings" for which liquidated damages may be recovered, and this issue will have to be decided by a jury.


IT IS SO ORDERED.


                                              /s/ Ortrie D. Smith
                                              ORTRIE D. SMITH, JUDGE
DATE: August 1, 2008                   UNITED STATES DISTRICT COURT