IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| THE WEITZ COMPANY, L.L.C., ) | |
| ) | |
| Plaintiff/Third-Party Plaintiff ) | |
| ) | |
| vs. ) | Case No. 07-0103-CV-W-ODS |
| ) | |
| MacKENZIE HOUSE, L.L.C. and ) | |
| MH METROPOLITAN, L.L.C., ) | |
| ) | |
| Defendants/Counterclaimants, ) | |
| ) | |
| ARROWHEAD CONTRACTING, INC., ) | |
| CONCORDE CONSTRUCTION ) | |
| COMPANY, INC., POLAR AIRE ) | |
| HEATING AND COOLING SERVICE, ) | |
| INC., CONSTRUCTION BUILDING ) | |
| SPECIALTIES, INC. and FIDELITY ) | |
| DEPOSIT COMPANY OF MARYLAND, ) | |
| ) | |
| Third-Party Defendants. ) | |

ORDER AND OPINION DENYING PARTIES' CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT

Pending is Defendants' Motion for Partial Summary Judgment (Doc. # 168). In its opposition Plaintiff asks for summary judgment on the same issue. Both requests are denied.

I. BACKGROUND

Defendant MH Metropolitan, LLC, owns a project to build an apartment complex at 45th and Madison in Kansas City, Missouri. Defendant MacKenzie House, LLC, is MH Metropolitan's managing member. Plaintiff was the general contractor originally retained to construct the apartments and other buildings/amenities for the complex. The contract was terminated on January 18, 2007, allegedly because Plaintiff failed to meet certain deadlines. The propriety of the termination, which is in dispute, is not relevant to the issues raised in this motion. Plaintiff initiated this lawsuit, contending it was due

money under the contract. Defendants (one, the other, or both; it is not clear) counterclaimed, alleging Plaintiff owes money pursuant to the contract's liquidated damages clause.

In addition to these primary allegations, Plaintiff also alleges that various subcontractors contributed to the delays. The present focus is on the actions of Concorde Construction Company, whose delays are asserted as a defense to the counterclaim and, in some instances, as a part of Plaintiff's claims against Defendants. Plaintiff's theory is predicated on paragraph 10.4 of the contract, the first two clauses of which read as follows:

> We have included Concorde, Horizon Plumbing and EEI as subcontractors per MacKenzie House's direction.
>
> Should Concorde, EEI (EEI is now a subcontractor of Concorde) or Horizon Plumbing fail to honor their bid, execute our subcontract agreement, default or cause delays in the project due to lack of, [sic] then MacKenzie House shall accept the risk and the potential additional cost to GMP required to subcontract with the next qualified bidder.

The parties agree that one or more words is missing from the phrase "in the project due to lack of"; Defendants do not clearly suggest what is missing, while Plaintiff contends the missing word is "performance."

Defendants contend the clear meaning of paragraph 10.4 dictates neither of them is responsible for any delays caused by Concorde unless Plaintiff entered into a subcontract with the next qualified bidder. Plaintiff argues the clause clearly does not retain a new subcontractor in order to hold Defendants accountable. The Court tends to believe Plaintiff has the better argument, but holds the contract is not so clear that its meaning can be established as a matter of law.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party

2

is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When a contract's terms are clear and unambiguous, the Court's sole task is to enforce the contract according to its terms. There is no need to construe an unambiguous contract because there is nothing to construe. E.g., Willman v. Beheler, 499 S.W.2d 770, 774-75 (Mo. 1973); Mackey v. Griggs, 61 S.W.3d 312, 315 (Mo. Ct. App. 2001). A contract is ambiguous only if it is reasonably susceptible to multiple meanings. E.g., Eisenberg v. Redd, 38 S.W.3d 409, 410 (Mo. 2001) (en banc); Bydalek v. Brines, 29 S.W.3d 848, 854 (Mo. Ct. App. 2000).

The critical phrase in paragraph 10.4 provides that if Concorde should "default on their contract or cause delays in the project" MacKenzie House will "accept the risk and the potential additional cost to the GMP" attributed to accepting the next qualified bid. Certainly, the second part of that clause imposes an obligation on MacKenzie House to pay the increased cost associated with a substitute subcontractor. However, MacKenzie House is also obligated to "accept the risk." Defendants ascribe no independent meaning to this proviso, interpreting it as either mere surplusage or as reference to "the risk" of having to pay a higher cost. This interpretation is supported by the text – but it is not compelled. Independent meaning can be ascribed to the obligation to "accept the risk," justified both by the natural desire not to interpret words

3

as being devoid of meaning and by the fact that the clause states MacKenzie House will "accept the risk *and* the potential additional cost to the GMP." Reference to "the risk" may be fanciful wording meant to describe the specific obligation to pay the increased cost, but it could also be reasonably interpreted as requiring MacKenzie House to assume all risks associated with Concorde's delayed performance, including (if necessary) the increased cost associated with replacing Concorde.

Defendants insist that Plaintiff could have proposed more specific language if it intended to transfer all risks associated with Concorde's performance. While true, this observation does not mean Defendants' interpretation is compelled. Defendants' interpretation would be more logically compelled if the clause simply declared "MacKenzie House shall pay any additional cost to GMP required to subcontract with the next qualified bidder." By adding an additional obligation to assume "the risk," the parties may have intended to require MacKenzie House to do more than simply pay that additional cost.

This reasoning – and Plaintiff's evidence – notwithstanding, the clause does not clearly indicate what "risks" might have been contemplated. The record strongly suggests – and if the Court were the factfinder, it might conclude – that Plaintiff's interpretation is correct. However, the requirement that MacKenzie House "accept the risk" does not clearly indicate what, if any, obligations are imposed.

### III.  CONCLUSION

Paragraph 10.4 is ambiguous and amenable to multiple plausible interpretations. Its meaning is a question of fact and the Record is not sufficiently clear to allow the Court to ascertain the meaning as a matter of law. The paragraph's meaning must be determined by a jury, and the parties' competing requests for partial summary judgment are denied.

IT IS SO ORDERED.

DATE: December 29, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT