IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| THE WEITZ COMPANY, L.L.C., | ) |
|     Plaintiff/Third-Party Plaintiff | ) |
| vs. | ) Case No. 07-0103-CV-W-ODS |
| MacKENZIE HOUSE, L.L.C. and<br>MH METROPOLITAN, L.L.C., | ) |
|     Defendants/Counterclaimants, | ) |
| ARROWHEAD CONTRACTING, INC.,<br>CONCORDE CONSTRUCTION<br>COMPANY, INC., POLAR AIRE<br>HEATING AND COOLING SERVICE,<br>INC., CONSTRUCTION BUILDING<br>SPECIALTIES, INC. and FIDELITY<br>DEPOSIT COMPANY OF MARYLAND, | ) |
|     Third-Party Defendants. | ) |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE EXPERT TESTIMONY OF PATRICK W. BRANNON

Pending are separate motions to strike the expert testimony of Patrick W. Brannon, one filed by Arrowhead Contracting, Inc., and one filed by Defendants. The motions raise similar issues. The motions (Doc. # 346 and Doc. # 358) are granted in part and denied in part.

Rule 702 permits expert testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 was amended following the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), which established the district court's role as a "gatekeeper" to insure that expert testimony is relevant, reliable, and helpful to the trier of fact. Case law establishes a list of factors that, depending upon the facts of the case and the field

of expertise at issue, may be helpful in conducting this inquiry. These factors include "(1) whether the expert's methodology has been tested; (2) whether the technique has been subjected to peer review and publication; (3) whether the technique has a known or knowable rate of error; and (4) whether the technique has been generally accepted in the proper scientific community." Turner v. Fire Equipment Co., 229 F.3d 1202, 1207-08 (8th Cir. 2000) (citing Daubert v. Merell Dow Pharm., Inc., 509 U.S. 579 (1993)). However, there is no universal list of factors or requirements; the inquiry depends upon the nature and circumstances of the case at hand. Kumho, 526 U.S. at 150-51; Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1082 (8th Cir. 1999).

The Court of Appeals has also cautioned that district courts against confusing matters of impeachment with matters of admissibility.[1] For instance, "the factual basis of an expert opinion goes to the credibility of the testimony, and not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination. . . . . [O]nly if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005) (internal quotations omitted).

Of course, to testify an expert must be qualified. The Court's gatekeeping function includes an obligation to assess whether the witness is qualified to present the opinion proffered.

> A witness can be qualified as an expert by "knowledge, skill, experience, training, or education" Fed.R.Evid. 702, and it is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case. See Kumho Tire, 526 U.S. at 156, 119 S.Ct. 1167. Once initial expert qualifications and usefulness to the jury are established, however, a district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, Kumho Tire, and related precedents.

---

[1] It is for this reason – among others – that the Court rejects Defendants' invitation to consider whether the expert is Plaintiff's "hired gun." Defendants' Suggestions at 4 n.3.

2

Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001).

I.

Brannon is an engineer who, generally speaking, is proffered to provide expert testimony regarding "scheduling delays, contract administration, construction means and methods, termination, construction costs, and damages." Plaintiff's Suggestions at 1. Defendants contend – and the Court agrees – that the bulk of Brannon's report extends beyond these areas and into matters for which he has no expertise or that are simply irrelevant. For instance:

Page 11 MacKenzie's budget was inherently unrealistic for the Project designed by its Architect. This was a conflict that should have been resolved between Owner and Architect in the design development process. It was certainly a problem known to MacKenzie before it began discussions with Weitz in the summer of 2004.

Page 14 MacKenzie's Concorde maneuver was indicative of what now appears to have been a deliberate strategy: first engage a highly reputable general contractor of proven ability and substance; then seek out and exploit the cheapest available subcontractors, regardless of experience, reputation or resources; and finally, use budgetary constraints to force the two together in the hope of enjoying the best of both worlds.

Page 52 Arrowhead strains credulity by first "misunderstanding" Weitz's clearly stated intentions and then concluding that its own unfounded anticipation of future events . . . constitutes a present breach of contract.

3

| | | |
|---|---|---|
| Page 169 | | In our opinion, MacKenzie's withholding of payment under these circumstances constituted a "Failure of Payment" as defined by the Contract. |
| Page 170 | | It remains only to consider MacKenzie's alleged justification for this failure of payment. . . . [D]uring the 7-day notice period following Weitz's letter of December 18, MacKenzie remained strangely silent on the subject of Pay Application No. 19. |
| Page 172 | | [I]t is our opinion that the Owner's demands regarding lien waivers went far beyond the requirements of the Contract; the actual source of those demands was entirely extra-contractual; that Weitz nevertheless made every reasonable effort to comply; and that the issue therefore had never been a reasonable or sufficient justification for delaying (or withholding) payment. |
| Page 192 | | Finally, to the extent that any failure to correct deficiencies actually existed, the Contract provided a specific solution far short of termination. |

These are but a *few* examples. The bulk of the report is replete with legal conclusions, recitation of letters and evaluations of events having no bearing on the matters on which Brannon is qualified to opine. The problem is that there are still a great many matters upon which Brannon may properly testify, and the Court is not inclined to pore over hundreds of pages of material to identify proper and improper portions.

This does not mean Plaintiff is free to elicit the entire contents of the report from Brannon. Such an endeavor would be impractical, particularly in light of the time limits on witness testimony. The Rules of Trial issued on September 25, 2007, provides that "[a]bsent good cause shown, the direct examination of each non-party witness shall be no longer than sixty (60) minutes." After reviewing Brannon's report, the Court is convinced that sixty minutes provides sufficient time for Plaintiff to elicit the *admissible* testimony, and if counsel focuses on that objective there should be no problem. The Court will aid this effort by broadly describing topics Brannon cannot testify about: these matters include legal opinions, parties' motivations, his interpretation of events and

4

statements during negotiations, his view as to the proper interpretation of contract terms (whether those terms are ambiguous or not), and his subjective opinions about the people involved in this case or their capabilities. The illustrations identified by the Court serve as examples of opinions that are prohibited.

The Court understands Brannon's testimony may necessarily refer to or rely on contractual provisions, but the Court can do no more than declare that legal opinions are not permitted and entertain objections to specific testimony at trial. Similarly, the Court recognizes that these broad parameters not particularly specific; without knowing exactly what Brannon will be asked and what he will say, the Court can do nothing other than entertain objections at trial.[2]

2.

The remaining arguments directly target the heart of Brannon's testimony, including particularly his delay analysis and damage analysis. While not couched in these terms, the arguments against the testimony can be summarized thusly: Brannon failed to account for certain facts in the way we think he should have, so his analysis is fatally flawed. All of these arguments may provide fertile ground for impeachment, but they do not demonstrate Brannon's opinions are inadmissible.

Many of the traditional factors for evaluating expert testimony are irrelevant given the nature of this case. Brannon applied a "window" methodology, which involves comparing the original, planned contract schedule to the actual, updated schedule. This method is accepted in the industry as a means for evaluating the cause and length of delays. Application of this methodology to the facts of this case has not been subjected to peer review, but this is not the sort of opinion one would expect to be peer reviewed. Movants contend Brannon's analysis is flawed because Weitz's updated/actual

---

[2]The Court's inability to be more specific is because these arguments really focus on issues related to relevance and the scope of Brannon's expertise as opposed to an evaluation of Brannon's actual expert opinion.

5

schedules were not properly updated – in other words, the data was flawed so the result is flawed.

Movants also fault Brannon's determination of the parties responsible for various delays. In particular, Defendants accuse "Brannon – as Weitz's hired gun who has a substantial percentage of his work tied to Weitz – had a clear motive to ignore non-Concorde causes of project delay and to point the finger at Concorde given Wietz's position that Metropolitan is a 'guarantor' of Concorde's performance under the contract." Defendant's Suggestions at 16. The Court cannot consider the substance of this contention, see footnote 1, supra, and it demonstrates the inherently factual (as opposed to legal) nature of Defendant's position. The Court cannot determine whether Brannon is "right" or "wrong," but only whether his opinion is sufficiently reliable to allow it to be presented to the jury. The Court concludes that it is. Other parties may attack Brannon's conclusions and point out alleged shortcomings in his analysis. They can ask him about factors that Brannon concluded were unimportant or of lesser importance. They can ask him why he did or did not consider certain factors. Larson, 414 F.3d at 941. It is contended Brannon was obligated to consider and reject "other causes" of the delay, but he purportedly did this in his analysis – which necessarily incorporated the roles of all the subcontractors and the contractor and determined who was responsible for which delay(s). Brannon was not required, for each delay, to explain both (1) who was responsible and why and (2) who was not responsible and why not.

<u>3.</u>

For the foregoing reasons, the motions to strike Patrick Brannon's testimony are granted in part and denied in part.
IT IS SO ORDERED.

DATE: November 19, 2009

/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT