IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| THE WEITZ COMPANY, L.L.C., | ) |
|     Plaintiff/Third-Party Plaintiff | ) |
| vs. | ) Case No. 07-0103-CV-W-ODS |
| MacKENZIE HOUSE, L.L.C. and MH METROPOLITAN, L.L.C., | ) |
|     Defendants/Counterclaimants, | ) |
| ARROWHEAD CONTRACTING, INC., CONCORDE CONSTRUCTION COMPANY, INC., POLAR AIRE HEATING AND COOLING SERVICE, INC., CONSTRUCTION BUILDING SPECIALTIES, INC. and FIDELITY DEPOSIT COMPANY OF MARYLAND, | ) |
|     Third-Party Defendants. | ) |

ORDER AND OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO CLAIMS INVOLVING DEFENDANTS

Plaintiff filed a Motion for Summary Judgment (Doc. # 347) and six different Suggestions in Support, each addressing various parties and various claims. In this Order, the Court focuses on the arguments relating to claims between Plaintiff and the Defendants.[1] These arguments are contained in Documents 349, 350, and 351 on the Docket Sheet.

---

[1]The parties dispute whether one or both Defendants are properly named as such. The Court does not address this issue herein, and for ease of discussion will refer to them collectively.

I.  BACKGROUND

This suit arises from a construction contract.  Plaintiff was engaged to construct one or more buildings, and one or both Defendants were obligated to pay Plaintiff. Plaintiff stopped work on or about December 26, 2006, because three applications for interim payments were not paid.  Defendants terminated Plaintiff on or about January 18, 2007, alleging Plaintiff was behind on the project.  Defendants then assumed Plaintiff's subcontracts and completed the project using Plaintiff's subcontractors. Plaintiff filed suit, alleging the contract was wrongfully terminated.  Defendants counterclaimed in order to recover (1) liquidated damages for the delayed completion and (2) the increased cost of completing the construction.

The Court will not provide a detailed discussion of the facts.  When a factual dispute exists the Court's view of the facts – beyond identifying the factual dispute's existence – is irrelevant.  In that situation it is the jury's determination of facts that is important.  The issues upon which the Court is granting summary judgment do not depend on factual matters.

II.  DISCUSSION

A.  Propriety of Plaintiff's Work Stoppage and its Entitlement to Interim Payments

Plaintiff's request for summary judgment regarding the propriety of its work stoppage and its entitlement to payment for applications 19-21 is denied because there are disputed issues of material fact.  The Court concludes section 9.4 of the General Con'ditions of the Contract for Construction ("General Contract") is ambiguous in establishing the extent of Defendants' discretion to decline to make payments certified by the architect.  There are also factual disputes regarding Plaintiffs' payments to subcontractors and other factors that led Defendants to decide not to pay the applications in question.

2

B.  Enforceability of the Liquidated Damages Provision

Plaintiff's request for a ruling that the liquidated damages provision is unenforceable is denied.  The provision provides for liquidated damages if the "Completion of a Building is delayed beyond the Scheduled Completion date for such Building."  Standard Form of Agreement Between Owner and Contractor, § 4.7 ("Standard Form").  Plaintiff contends the provision is unenforceable because the parties' agreement does not establish a Scheduled Completion date.  However, Section 4.6, describes "[t]he Scheduled Completion Date for a Building" as being set forth "in the Project Schedule," so the parties' agreement provides a mechanism for ascertaining this "missing" term.  Contrary to Plaintiff's argument, the purported schedule does not need to contain a cross-reference back to the Standard Form.  Such a reference would be helpful, but the lack of such a reference does not entitle Plaintiff to judgment as a matter of law.  The jury may conclude that the document identified by Defendants is the "Project Schedule" that, according to Section 4.6, provides the "Scheduled Completion Date" for each building.

C.  Calculation of Defendants' Damages Associated With Completion of the Project

Some of Plaintiff's arguments regarding Defendants' damages calculations are correct – but the Court does not know where that leaves matters.  Rather than recap the parties' arguments, the Court will simply set forth its view of the law.

"Where there has been part performance on a construction contract, the owner's measure of damages is generally the cost of completion. . . .  When a breach results from a combination of defective construction and a failure to complete the work, the owners' damages are calculated using the reasonable cost of reconstruction, repair, and completion in accordance with the contract."  Ernery v. Freeman, 84 S.W.3d 529, 536 (Mo. Ct. App.  2002); see also Information Systems & Networks Corp. v. City of Kansas City, 147 F.3d 711, 713 (8th Cir. 1998) (applying Missouri law).  All of Plaintiff's arguments regarding the reasonableness of the sums paid or actions taken by

3

Defendants raise issues of fact that can be resolved only by the jury.  Similarly, arguments that certain costs were associated with improvements over and above those originally called for in the contract will also have to be presented to the jury.

However, Plaintiff is correct in arguing that the costs Defendants seek to recover must be certified by the architect.  Obviously, the parties may limit or add conditions to the common law's provision of damages.  Section 14.2.4 of the General Contract states:

> If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expense made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor.  If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner.  The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

This clause establishes that the amount to be paid is the amount certified by the architect.  If the architect does not certify particular (or any) costs, those costs are not owed.  The Court rejects Defendants' contention that the phrase "upon application" renders an application to the architect discretionary; the phrase is there because the entire sentence applies to the owner or the contractor "as the case may be" depending on who is seeking payment.  The party seeking payment (either the contractor or the owner, as the case may be) has to apply for certification, and the other party is obliged to pay the amount certified.  This is the only reasonable interpretation of the language; Defendants' proposed interpretation is unreasonable because it renders the clause devoid of value and completely unnecessary.  The Court's interpretation is also consistent with the remainder of the contract, which assigns the architect the responsibility to certify certain costs, events, and the like, and then creates obligations based on those certifications.[2]

---

[2]The Court also rejects Defendants' intimation that it satisfied this provision by having other third parties review the costs.  The parties' agreed that the architect would conduct the review, not other third parties.

4

Having decided Plaintiff is correct in contending the architect's certification is necessary, the Court rejects Plaintiff's argument that Defendants are now barred from seeking those costs. Section 14.2.4 does not require the certification occur at any particular point in time, so the Court cannot impose a requirement that certification be obtained before the lawsuit was filed, before demand for payment was made on Plaintiff, or at any other time. So long as it was made before trial on the claim begins, Defendants have satisfied this provision.[3]

Finally, Plaintiff contends Defendants are seeking damages that are expressly prohibited by the contract. Plaintiff argues Defendants are seeking (1) "delay damages," which are allegedly prohibited by the contracts with subcontractors, (2) reimbursement for repair costs even though the subcontractors' work was warranted for one year, and (3) reimbursement for insurance premiums.

With respect to the delay damages, Plaintiff alleges the subcontractors had no right to recover the costs in question from the general contractor, so when Defendants stepped into the contractor's shoes and assumed the subcontracts it was not obligated to pay. It is not clear what costs Plaintiff is contesting in this argument; Defendants describe these costs as including "costs for extended rental periods for dumpsters, lift equipment and portable toilets." The subcontracts define "delay damages" as "any damages incurred or sustained by the Subcontractor due to . . . . extension of the completion date of the Subcontractor's Work, or to enlargement of the Subcontractor's Work (whether due to any changes, acceleration, suspension, delay, hindrance, disruption, interruption, or interference in, with or of the Subcontractor's Work or otherwise) . . . ." Defendants' response is less than illuminating: they simply argue they had the right to complete the project. Accepting this as true, Defendants did not have the right to increase the cost of completion beyond that necessary or reasonable to complete the project. Any costs Defendants paid when there was no obligation to do so cannot be passed on to Plaintiff. The Court cannot presently determine what costs, if

---

[3]Of course, the architect's standard for certification must be the same standard used before the contract was terminated.

5

any, fall into this category. Defendants may recover costs they incurred in their role as the main contractor: thus, for example, if the main contractor was obligated to rent dumpsters, lift equipment and portable toilets, Defendants may recover those costs. If those costs were to be borne by the subcontractors, then Defendants were not obligated to repay the subcontractors and they cannot pass that cost to Plaintiff.[4]

The so-called "repair costs" are not prohibited by contract, so the Court cannot rule that they are not recoverable. At best, Plaintiff can argue that the costs were unnecessary or unreasonable, but this is a factual issue the jury will need to decide.

Section 11.4 generally imposes an obligation on Defendants to maintain insurance. Defendants contend they agreed to provide insurance only for the 458 days contemplated for construction, but the parties' agreement contains no such limitation. As the cost was to be borne by Defendants, they cannot pass this cost to Plaintiff.

Finally, Defendants seek recovery of MacKenzie House's internal personnel costs. The parties' contract bars recovery of their own personnel costs, so recovery of MacKenzie House's internal costs would be barred only if (1) MacKenzie House is a party to the contract or (2) MacKenzie House and MH Metropolitan are alter egos. In a separate order, the Court has held these matters must be resolved by a jury, so the Court cannot conclude these costs are prohibited as a matter of law.

### III. CONCLUSION

Plaintiff's request for summary judgment is granted on Defendants' claims is granted in part. Defendants may not recover sums paid to subcontractors for which there was no obligation to pay. Defendants are entitled to recover costs only if they

---

[4]The Court rejects Defendants' argument that it did not have the subcontracts so it did not know its obligations. Surely, Defendants did not pay subcontractors simply because they were asked to do so without looking at the subcontracts (which the subcontractors could have provided). The Court also rejects Plaintiff's argument that the liquidated damage provision bars recovery of these costs even if they were properly borne by Defendants. That provision compensates for the lost rental value due to delayed completion, not the cost of completing construction.

6

have been certified by the architect in accordance with the General Contract's provisions. The Court has also identified Missouri law regarding the measure of damages that is available. In all other respects, Plaintiff's request is denied.

IT IS SO ORDERED.

DATE: November 19, 2009

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT