IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| THE WEITZ COMPANY, L.L.C., | ) | |
| | ) | |
|     Plaintiff/Third-Party Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 07-0103-CV-W-ODS |
| | ) | |
| MacKENZIE HOUSE, L.L.C. and | ) | |
| MH METROPOLITAN, L.L.C., | ) | |
| | ) | |
|     Defendants/Counterclaimants, | ) | |
| | ) | |
| ARROWHEAD CONTRACTING, INC., | ) | |
| CONCORDE CONSTRUCTION | ) | |
| COMPANY, INC., POLAR AIRE | ) | |
| HEATING AND COOLING SERVICE, | ) | |
| INC., CONSTRUCTION BUILDING | ) | |
| SPECIALTIES, INC. and FIDELITY | ) | |
| DEPOSIT COMPANY OF MARYLAND, | ) | |
| | ) | |
|     Third-Party Defendants. | ) | |

## ORDER AND OPINION DENYING MOTIONS FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL

Following a jury trial, the Court entered judgment, *inter alia*, against The Weitz Company, LLC ("Weitz") and in favor of MH Metropolitan, LLC ("MHM"), Arrowhead Contracting, Inc. ("Arrowhead"), and Concorde Construction Company ("Concorde"). Weitz has filed three separate motions asking for judgment as a matter of law or for a new trial. The motions (Doc. # 593, 595, and 597) are denied.

"[J]udgment as a matter of law should not be granted unless 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Arabian Ag. Servs. Co. v. Chief Indus., Inc., 309 F.3d 479, 482 (8th Cir. 2002). Applying this standard requires the Court to make all reasonable inferences in favor of the nonmoving party, and to deny the motion unless the record is devoid of evidence to support the verdict. Id.; see also McGreevy v. Daktronics, Inc., 156 F.3d 837, 840-41 (8th Cir. 1998). A motion for new trial "may be granted where the verdict is against the clear weight of the evidence or to

prevent injustice," but the Court "cannot reweigh the evidence and set aside a jury verdict because the jury could have drawn different conclusions or inferences or because the court feels that other results are more reasonable." Ratliff v. Schiber Truck Co., 150 F.3d 949, 952 (8th Cir. 1998); see also Boesing v. Spiess, 540 F.3d 886, 890 (8th Cir. 2008).

For ease of discussion the Court will begin by addressing Weitz's motion regarding the judgments in favor of MHM. Some of the issues raised in that motion apply to other parties as well, but the primary issues in the case involved these two parties.

## I. MHM (Doc. # 597)

### A.

Weitz contends MHM did not make a submissible case on its breach of contract claim and that MHM lacked cause to terminate Weitz. Critical to Weitz's reasoning is its position that MHM could not terminate the contract because of delays and that MHM's only recourse was to rely on the liquidated damage provision. This interpretation is neither fair nor reasonable. The sole *damages* permitted to MHM in the event of delays are those specified in the liquidated damage provision, but nothing indicates those damages are the sole *remedy* available. Weitz's interpretation would allow it to delay forever and hold MHM hostage to Weitz's whims regarding completion. Under Weitz's view, MHM would have no remedy if Weitz opted to simply never complete the building: it could not terminate the contract, and it could not recover liquidated damages because they could not be calculated until the project was completed. Weitz also contends MHM's termination was not permitted because MHM did not obtain the Architect's certification as required by the contract, but there was evidence that a certification was completed. Weitz's arguments to the contrary were obviously rejected by the jury. Moreover, while Weitz quibbles with the certification's content, there is evidence

2

supporting the jury's decision that the certification described conditions contained in section 14.2.1 of the contract.[1]

B.

Weitz next argues it was entitled to a mitigation instruction. To place matters in perspective, a mitigation instruction was read to the jury. Instruction 26 told the jury that if it found for MHM on its breach of contract claim then it must not award damages for any delays that it attributed to MHM's failure to complete the project in a reasonable time or to efforts and costs that were not reasonable. Weitz contends the jury should have been told to consider whether MHM's decision to terminate the contract constituted a failure to mitigate. Weitz essentially asked that the jury be told to consider whether MHM's damages would have been less if MHM had opted not to terminate the contract and allow Weitz to continue. Accepting, theoretically, that there might be a time when a party injured by a breach exacerbates that injury by terminating the contract, the paramount problem with Weitz's position is that there was no evidence to support it in this case. This theory is viable, if at all, only if damages can be calculated should the injured party forego its right to terminate the contract. Here, determining damages in the absence of termination would have required the jury to speculate as to when Weitz would have completed the project. Moreover, one of the issues certified by the architect as justifying termination related to the quality of materials used and the construction as a whole. These concerns are not amenable to calculation, so there is no way for a jury to decide that MHM would have been "better off" by ignoring the breach.

---

[1] In light of the jury's verdicts there is no need to address whether MacKenzie House should be liable on any judgments against MHM. The Court also notes that the jury was told to consider the issue only if it found in favor of Weitz and against MHM, so the jury did not address the matter. Even if the issue must be decided, it could not be decided by the Court.

3

C.

Weitz contends its rights were violated because the Court placed "arbitrary" time limits on its rebuttal case. The Record belies Weitz's argument, demonstrates its vehemence is unjustified, and further establishes that Weitz has failed to preserve this issue.

Before Weitz began its rebuttal, MHM, MacKenzie House, and Arrowhead filed a joint motion to strike Weitz's rebuttal in its entirety. The movants alleged Weitz planned to recall witnesses that had already testified and the purported rebuttal would be nothing more than a reiteration of the testimony that had already been offered. The matter was taken up before rebuttal began, with attorneys for all concerned offering their views. Tr. at 2379-83. Weitz's attorney concluded by stating he was "not asking for a lengthy amount" of time. Weitz's counsel indicated the amount of time he desired for rebuttal, which he agreed added up to approximately two hours, as follows: "30 minutes . . . from Brannon, 15 from Sikora and Way and more than an hour for Stewart." Tr. at 2383-84. The Court then limited Weitz's rebuttal to two hours – the precise amount of time Weitz requested. Tr. at 2384. While the Court imposed limits, those limits were not based on any of the movants' arguments. Nonetheless, Weitz's counsel continued to characterize his situation as having been somehow limited by the Court – even though the Court limited counsel to the amount of time he said he needed. Tr. at 2477.

During Stewart's testimony, Weitz's counsel requested – and received – more time. Tr. at 2543. As it turned out, according to the Deputy Clerk's Minute Sheet (Doc. # 532), Brannon testified for fifty-two minutes and Stewart testified for one hour and fifty-one minutes. At no time did the Court tell counsel to stop questioning, and at no time (other than the occasion mentioned) did counsel request more time.

After completing his questioning of Stewart, Weitz's counsel made the following statement:

> Your Honor, plaintiff is prepared to rest its case in rebuttal. I simply
> wanted to note for the record that I would have additional witnesses and

4

> testimony to put on. I understand though the Court's ruling has limited my
> time to do that and I've attempted to abide by Your Honor's ruling.

Counsel then renewed Weitz's motion for judgment as a matter of law and motion for default judgment against Concorde. Tr. at 2569. While counsel originally identified two additional witnesses (Sikora and Way), the subject of their testimony was never identified.

    First, it is not at all clear that the Court's time limits caused Weitz to forego calling any witnesses. It requested two hours for rebuttal . . . and it was granted two hours for rebuttal. It later requested additional time . . . and it was granted additional time. Thereafter, it never requested more time – counsel simply complained about the time that had been allotted, yet counsel had nothing to complain about because he was granted all the time he actually requested. Having received all the time requested, there is no basis for concluding Weitz failed to elicit any testimony it wanted. Weitz also failed to identify any testimony it was forced to omit, which is significant because a party complaining about time limits must not only object and request more time but also must make "an offer of proof of the evidence excluded by the time limits." Harris v. Chand, 506 F.3d 1135, 1141 (8th Cir. 2007). Even now, the Court does not know what testimony Weitz believes it was unable to present in rebuttal.

    Based on the Record, the Court is convinced that Weitz is trying to create an issue that does not exist by turning the proverbial molehill into a mountain (and there may not even be a molehill). Weitz is not entitled to relief.

<u>D.</u>

    Prior to trial, the Court granted a motion in limine barring evidence regarding the verdicts, rulings, and evidence from another case involving a different construction project. That project – referred to as the Washington project – involved Weitz, MacKenzie House, and an entity created by MacKenzie House called MH Washington. The Court rested its ruling on the limited probative value of such evidence, as it related to a completely different project and had nothing to do with the project at issue in this

5

case. Weitz insists that the evidence of the parties' conduct in the Washington project was probative of MHM's and MacKenzie House's motive, opportunity, intent, preparation, plan and knowledge. While these are permissible uses for evidence of prior acts, see Rule 404(b), the Court remains unconvinced that any of the evidence actually related to those topics. The projects' geographic proximity does not make evidence about one relevant to the other, nor does the mere fact that many of the same parties were involved. Weitz struggled mightily to persuade the Court that some connection existed, but the efforts were not persuasive.

The Court believes Weitz wanted the jury to decide (1) it should prevail in this case because of what happened on the Washington project and (2) it should prevail because it prevailed in the other lawsuit. Even if this was not Weitz's objective, there was a substantial risk that this is what would happen. Finally, there was no way to fairly present the issues Weitz wanted to present without essentially retrying the whole matter.[2] This was not an appropriate forum for such an effort, and the Federal Rules of Evidence do not require it.[3]

E.

In an argument appearing both with respect to MHM and Concorde, Weitz contends the Court should have allowed evidence regarding the relationship between MHM and Concorde as well as evidence about Concorde's performance on an

---

[2]Weitz also suggests that MHM was allowed to present evidence about the Washington project, making it unfair for the Court to preclude it from responding in kind. It characterizes MHM as "intentionally and repeatedly abus[ing] the ruling to mislead the jury about Weitz's performance on the Metropolitan Project, knowing Weitz could not fully respond due to the ruling . . . ." Doc. # 598, p. 11. This is not a fair characterization of the trial. In any event, Weitz does not identify any portion of the transcript where such events took place, so the Court cannot meaningfully evaluate the claim that at some point MHM "opened the door" to evidence about the Washington project.

[3]It is worth noting that the Court also precluded other parties from presenting evidence about the performance of Jeff Stewart (Weitz's employee) on other projects.

6

unrelated project (referred to as the Mill Creek Project). Much of the discussion regarding the Washington project applies here as well: the evidence's relevance was doubtful at best, would have sidetracked the litigation, and presented as substantial risk of jury confusion. This trial was about the parties' actions with respect to the Metropolitan project: performance on other projects was irrelevant (or at best, tangentially related). The substantial risk of prejudice easily outweighed any probative value of the evidence.

### F.

Weitz also contends the doctrine of curative admissibility justified presenting evidence about the Washington and Mill Creek projects. In many respects, Weitz's request is an obvious attempt to have the jury decide a party breached the Metropolitan contract because that party breached some other contract relating to some other project. In all respects, the Court discerns no basis for invoking the doctrine; while the other contracts were mentioned occasionally, they were never mentioned in circumstances that prejudiced Weitz such that admission of more evidence about the unrelated projects was necessary. Cf. Goffstein v. State Farm Fire & Cas. Co., 764 F.2d 522, 524 (8th Cir. 1985) (discussing when curative admissibility should be allowed).

### G.

Weitz contends MHM should not have been permitted to recover the costs involved in completing the project. This issue was discussed at length in orders issued prior to trial,[4] and both parties were permitted to present arguments regarding the

---

[4] Most notably, Doc. # 407 at pages 3-6.

appropriate amount of damages.[5] The Court discerns no need for an extended discussion at this juncture.

## H.

Weitz complains that MHM's expert testimony was improperly admitted. In reality, despite Weitz's characterization the evidence in question was not expert testimony: it was testimony from people involved in the project describing events that actually occurred.

Weitz also contends that only its expert should have been permitted to testify as to the cause of delays because only its expert conducted a critical path analysis. The flaw in this argument is that it assumes that the only way to establish the cause of delays was through expert testimony. An expert examining documents after the fact may provide testimony about the nature and causes of delay – but a witness to events occurring at the work site is also competent to testify on those matters.[6]

---

[5]Instructions 25 and 26 are accurate statements of law and provided the parties with plenty of latitude to argue their theories of the case. In particular, Weitz could have argued – as it does now – that any particular item of damages was not "sustained as a direct result" of Weitz's breach.

[6]The cases Weitz relies upon – neither of which involve Missouri law – do not compel a different conclusion. One case discusses the other in dicta, and does not involve the issue at hand. The second case involved a determination as to whether construction had been completed within a reasonable time, an issue that "depended on resolving subsidiary issues of fact that lay jurors could not reasonably answer on the basis of everyday experience." Lenkin-N Ltd. P'ship v. Nace, 568 A.2d 474, 478 (D.C. 1990). The court continues by noting the dearth of evidence on the issue; while it criticizes the lack of expert testimony to aid the jury, the court did not establish a hard and fast rule requiring such testimony. In any event, the Court adheres to its holding that while appropriate expert testimony could be offered, it was not mandatory – particularly given the testimony of people actually involved in the project.

I.

Weitz contends the Court should not have permitted MHM to introduce evidence from Weitz's evaluations of its employees. The Court is hampered in its ability to address this issue because Weitz has not identified any particular exhibits, nor has it identified any particular portion of the transcript when such evidence was admitted. The Court recollects that such evidence was admitted, but it is impossible to discuss whether any of it was admitted erroneously without such information – and the Court is neither required nor inclined to search the Record on Weitz's behalf.

The manner in which the issue was raised during trial further establishes the importance of such information. On November 13, 2008, the Court issued an Order Addressing Discovery Issues that, *inter alia*, required Weitz to supply copies of annual performance evaluations and assessments for certain individuals Weitz had assigned to work on the Metropolitan project. Prior to trial, Weitz filed a Motion in Limine asking that all evidence from such records be barred because it violated the employee's right to privacy. The motion also specifically targeted evidence relating to the reason for Kevin Roberts' dismissal. On December 2, 2009, the Court issued an Order that, among other things, precluded evidence about the reasons for Roberts' dismissal and "in an abundance of caution" barred "all evidence from those records unless the matter is first addressed out of the jury's hearing."

Approximately ten days before trial, MHM filed a Trial Brief arguing other portions of the employee evaluations were admissible. Before jury selection, counsel asked whether the Court wanted to address the matter then or later. The Court responded as follows:

> Probably need to take that up in the context of the case when we get to it, Mr. Kreamer. I often times learn a great deal about a case during opening statements and so that will be helpful to me in deciding that issue. . . . I will rule it when the time comes but my early inclination is to admit those portions of the evaluations that represent direct evidence of the performance of Weitz employees on this project. Now I don't want to spend a lot of time on that because I looked through the evaluations and it seems to me that every person whose evaluation I looked at either met or

9

exceeded required performances. . . . But, you know, I need to know more about the case than I know right now before I can give you a definitive answer.

Tr. at 20.

The Court's preliminary ruling did not permit the *carte blanche* admission of employees' records: only evidence relating to performance on *this* project was contemplated. The Court cannot evaluate Weitz's contention that any evidence admitted was irrelevant or constituted improper character evidence without Weitz's identification of the evidence in question. As a general matter, the Court continues to hold that Weitz's internal evaluations of its employees' performance on the Metropolitan project (1) was relevant and (2) was not improper character evidence.

The Court also rejects Weitz's contention that the evidence was inadmissible regardless of its relevance because admission violated its employees' privacy. Weitz's statements regarding Missouri law are overly broad. While employees enjoy a modicum of privacy in their employment records, this expectation is not so strong that it can resist rules of discovery or evidence. "[A] subpoena for employment records must be limited to the issues raised in the pleadings." State ex rel. Crowden v. Dandurand, 970 S.W2d 340, 343 (Mo. 1998) (en banc). In this case, the Missouri Supreme Court noted that a party waives his right to privacy to the extent he raises issues in his own pleadings, but the court did not indicate this was the only circumstance in which employee records could be used as evidence. To the contrary, the Missouri Supreme Court did not (then or ever) intimate that the privacy expectation was strong enough to prevent the discovery or admission of relevant evidence. E.g., State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner, 239 S.W.3d 608 (Mo. 2007) (en banc); State ex rel. Madlock v. O'Malley, 8 S.W.3d 890 (Mo. 1999) (en banc); State ex rel. Tally v. Grimm, 722 S.W.2d 604 (Mo. 1987) (en banc).[7] These cases make clear that caution must be

---

[7]Weitz's argument also leads to absurd results. Weitz argues the evaluation is privileged in its written form; it does not argue the *contents* of the evaluation are privileged (and there is no interpretation of the aforementioned cases that would justify such an argument). Therefore, the evaluator could testify about the quality of an employee's work on a particular project – but, according to Weitz, the actual written

10

exercised when a court orders production of an employee's file – but they do not address, much less alter, the admissibility of such evidence.

J.

Weitz contends the Court erred in failing to require the jury to specify the amount of delay it attributed to Horizon Plumbing ("Horizon") when it calculated the liquidated damages. According to Weitz, this is significant because it should not have been responsible for any delays attributable to Horizon. On this latter point Weitz is correct; however, this does not mean the instructions were improper. Instruction 25 told the jury to award "any liquidated damages to which . . . MH Metropolitan is entitled under the prime contract." This was a correct statement of the law.

Weitz remained free to argue to the jury that certain portions of the delay were attributable to Horizon. Weitz essentially argues the instruction and verdict form should have called for more detail so the jury could "show its work." The law does not require this.

K.

Weitz re-asserts its prior arguments relating to the calculation of the liquidated damages and its argument that the provision is an improper penalty and is therefore invalid. These issues were addressed in the Court's August 1, 2008, Order (Doc. # 157), and the Court is not persuaded that its rulings were incorrect.

L.

Weitz seeks judgment with respect to the meaning of paragraph 10.4 of the contract, arguing the evidence "clearly showed" what the provision meant. The Court

---

document could not be introduced.

disagrees. As discussed in the Court's December 29, 2008, Order, the paragraph was ambiguous. The evidence at trial was conflicting and did not compel any particular conclusion about the paragraph's meaning. Weitz is not entitled to judgment as a matter of law on this issue.

## II. ARROWHEAD (Doc. # 595)

### A.

Weitz contends the evidence at trial was undisputed that Arrowhead was the first party materially breach the subcontract. The evidence is not as clear as Weitz suggests. While there was evidence supporting this conclusion, there was also evidence that (1) the schedule provided by Weitz was flawed and inconsistent and (2) the interim deadlines were not relied upon or deemed important, so the failure to meet any of them was immaterial. Ultimately, in this assignment of error Weitz simply reargues its view of the facts. The jury was entitled to reject that view.

### B.

Weitz next argues Arrowhead failed to give proper notice before stopping work. Weitz characterizes the evidence at trial as demonstrating Arrowhead did no work in the fifteen days after it provided notice, and from this Weitz contends Arrowhead improperly stopped work. The fatal flaw in Weitz's argument is that the evidence did not establish there was any work for Arrowhead to perform in that time period. To the contrary, the evidence established that the weather made it impossible to pour concrete. Therefore, the evidence does not conclusively establish Arrowhead failed to provide sufficient notice.

### C.

In its third argument, Weitz asserts an argument similar to the one discussed in subsection H above. For the reasons discussed earlier, the Court rejects this contention.

### D.

Weitz's fourth argument is the same as the one presented in subsection C with respect to MHM. For the reasons discussed earlier, the Court rejects this contention.

### E.

Weitz's final point involving Arrowhead reasserts its request for judgment as a matter of law on Arrowhead's claims. The grounds asserted are those presented in Weitz's written motion, (Doc. # 530), see also Tr. at 2438, and those grounds generally attack the sufficiency of the evidence. The Court adheres to its ruling that there was sufficient evidence to support a verdict in favor of Arrowhead on its claim against Weitz.

### III.  CONCORDE CONSTRUCTION CO. (Doc. # 593)

Weitz's primary argument[8] about Concorde involves its request for default judgment. This issue was addressed in the Court's October 30, 2010 Order (Doc. # 563). While that discussion will not be repeated *en toto*, it forms the basis for the Court's continued rejection of Weitz's claim.

Contrary to Weitz's argument, the Court was not obligated to enter a default judgment against Concorde in these circumstances. Most notably, (1) Concorde filed

---

[8]Weitz presents additional arguments that were also presented in other motions addressed by this Order. The Court's rulings on these issues is the same as those made in the context of those other motions.

13

an Answer, (2) Concorde complied with all pretrial orders, (3) Concorde responded to all discovery requests and dispositive motions, and (3) a default judgment would be contrary to the findings made by the jury with respect to claims involving non-defaulted parties. Weitz has not addressed the conclusions expressed in the April 30 Order. Weitz also has not addressed the legal authorities cited in the April 30 Order.

Weitz also intimates that the Court somehow promised that a judgment against Concorde would be entered. This is simply not true. The Court stated that "[i]f the jury doesn't do the right thing which is unimaginable to me, I'll deal with it post trial." Tr. at 2254. In response to further inquiry, the Court confirmed that the motion for default judgment was being overruled. Tr. at 2255. The Court did not state, intimate, or imply that it would automatically enter a judgment for Weitz against Concorde – it said it would do so if the jury's decision was wrong.

As it turns out, the jury did nothing wrong. At the time the Court made these statements it had not investigated or determined whether a default judgment against Concorde was required. If, as Weitz contended, such a judgment was required, then the Court would have entered it. Having had the opportunity after trial to review Weitz's authorities and conduct an independent review of the law, the Court concluded (and still holds) that a default judgment was not mandated. Therefore, there was no error by the jury that requires correction.

## IV. CONCLUSION

For the reasons stated, Weitz's post-trial motions are denied.

IT IS SO ORDERED.

DATE: November 10, 2010

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

14